UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALYSHA CARIN SEADORF,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No.  2:25-cv-00551 AC<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]  For the reasons that follow, the court DENIES plaintiff's motion for summary judgment, and GRANTS the Commissioner's cross-motion for summary judgment.

////

---

[1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).  SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

1

## I.  PROCEDURAL BACKGROUND

Plaintiff applied for disability insurance benefits and for supplemental security income on August 15, 2022.  Administrative Record ("AR") 223-224.[2]  The disability onset date for both applications was alleged to be June 11, 2022.  AR 223.  The applications were disapproved initially and on reconsideration.  AR 108-109, 150-151.  On November 30, 2023, ALJ Sara Gillis presided over the hearing on plaintiff's challenge to the disapprovals.  AR 33-69 (transcript).  Plaintiff appeared with her counsel, Elizabeth Gade, and testified at the hearing.  AR 33.  Vocational Expert Corinne Porter also testified.  Id.

On March 28, 2024, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 14-28 (decision).  On January 7, 2025, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-6 (decision).  Plaintiff filed this action on February 19, 2025.  ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3).  The parties consented to the jurisdiction of the magistrate judge.  ECF No. 8.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 10 (plaintiff's summary judgment motion), 14 (Commissioner's summary judgment motion), 15 (plaintiff's reply).

## II.  FACTUAL BACKGROUND

Plaintiff was born in 1990, and at age 31, was a "younger person" under the regulations at the time of alleged disability onset.  AR 70; see 20 C.F.R §§ 404.1563, 416.963 (same).  Plaintiff has a high school education with a history of special education.  AR 20, 237.  Plaintiff has work history as a crew member at fast food restaurants and as a housekeeper in an elder care facility.  AR 237.  Plaintiff alleged disability due to chronic depressive episodes, suicidal ideation, generalized anxiety, and high blood pressure.  AR 236.  She identified her height as 5 feet six inches and her weight as 310 pounds.  Id.

---

[2]  The AR is electronically filed at ECF No. 9.

### III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error,

which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI).  Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not,

4

the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2027.

2. [Step 1] The claimant has not engaged in substantial gainful activity since June 11, 2022, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.)

3. [Step 2] The claimant has the following severe impairments: major depressive disorder (MDD), generalized anxiety disorder (GAD), attention deficit hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant can perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving simple work-related decisions, few workplace changes, and no more than occasional interpersonal interaction with supervisors, coworkers, and the public.

6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. [Step 5] The claimant was born [in 1990] and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Step 5, continued] The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. [Step 5, continued] Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404. 1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 11, 2022, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 19-27.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 27.

## VI.  ANALYSIS

Plaintiff alleges that the ALJ erred by (1) failing to provide clear, convincing, and well-supported reasons for discounting her allegations of mental dysfunction; (2) failing to properly evaluate the examining medical source opinion of the consultative psychologist, Michael Molyn, Psy.D.; and (3) failing to properly evaluate the functional impact of plaintiff's morbid obesity. ECF No. 10 at 8-18.

### A.  Plaintiff's Subjective Testimony

Plaintiff alleges that the ALJ failed to provide clear, convincing, and well-supported reasons for discounting her allegations of mental dysfunction.  ECF No. 10 at 9; AR 24. Evaluating the credibility of a plaintiff's subjective testimony is a two-step process.  First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged  . . . In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Garrison v. Colvin, 759

6

F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).  Objective medical evidence of the pain or fatigue itself is not required.  Id. (internal citations omitted).  Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so."  Id. (internal citations omitted).  The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."  Id. at 1016.

Here, the ALJ reported that plaintiff testified to having worked through Pride Industries at the Sacramento airport, where she had a job coach who was present for about three hours a day, once or twice per week.  AR 22, 41.  Plaintiff was successful at this job until they moved her to a concourse where she encountered more travelers and ended up in a supply closest overwhelmed, banging her head against the wall.  Id.  Plaintiff also has work history in various fast food industries but would become overwhelmed if she had to do customer service, and the employment ended.  AR 22, 38-41.  Plaintiff, who lives with her mother, nana, and brothers (AR 33), is able to start chores on a chore list assigned by her mother, but at times is unable to complete the chores.  AR 22, 44.  Her mother calls her twice a day to make sure she is awake and to check if she has done her chores.  Id.

Plaintiff stated she has panic attacks, both at home and outside the home.  AR 23.  She gets overwhelmed at times or thinks about her childhood.  Plaintiff becomes overwhelmed and does not go out alone but can go out with her mother or nana.  AR 23, 48.  When plaintiff shops alone she becomes distracted and will buy everything or spend all her money.  AR 23, 45, 48-49.  Plaintiff can be alone at home but feels better when her brothers, mom, or nana are there.  AR 23, 51.  Plaintiff needs reminders to shave and brush her teeth.  AR 23, 52.  Plaintiff can do minor cooking with supervision.  AR 23, 55.  Plaintiff has difficulty sleeping, though that has improved with Trazadone.  AR 23, 46.  Plaintiff reports that on bad days she cannot concentrate, checks windows and doors, and paces; these bad days occur about six times per month.  AR 23, 59-60.

The ALJ concluded that plaintiff's "medically determinable impairments could reasonably

7

be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  AR 23.  The ALJ primarily discounted plaintiff's testimony due to a history of good control of plaintiff's mental conditions with medications.  AR 23, citing AR 334-35, 353, 421-22, 514, 522, 525, 528-29, 532, 536, 539.

The ALJ detailed medical records, including the aftermath of a June 2022 hospitalization following the death of plaintiff's grandfather and plaintiff's subsequent ingestion of an overdose of Tylenol.  Id.  The ALJ cited various medical records from late 2022 and 2023 demonstrating improvement with Lexapro, Trazodone, and over the counter Vitamin D.  AR 24.  For example, in September, October, and December 2022, plaintiff was taking psychotropic medication and her mental status examinations were generally normal.  AR 23-24, citing AR 353, 355-56, 511.  In 2023, she continued to take medication and her examinations remained largely normal.  AR 24, citing AR 421-22, 514, 522, 525, 528-29, 532, 536, 539.  Improvement with medications is a valid reason to find an impairment not disability.  Warre v. Comm'r of Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling ...."); Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017) ("Symptoms may wax and wane during the progression of a mental disorder," but they "may also subside during treatment" and "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability").

Plaintiff argues the ALJ erred because, though she acknowledges "it is true that [she] received some benefit from psychiatric medications," plaintiff also "continued to exhibit abnormal signs during mental examinations throughout the adjudicated period."  ECF No. 10 at 9.  Plaintiff cites instances from the record in 2022 in which she presented with a guarded attitude and flat affect, had monotone and poorly articulated speech, depressed thought content, anxiety showed signs of anxiety and uncooperative behavior.  Id. at 10, citing AR 505-506.  Plaintiff cites a similar medical note from April of 2023 (AR 457-459) and December 2023 (AR 553-554, 559).

The court is unpersuaded by plaintiff's argument, which at most offers no more than an

alternative interpretation of the record.  Ample evidence supports the ALJ's conclusion; this is not a case in which the ALJ cherrypicked one or two instances of improvement to distort the larger picture.  Further, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Woods v. Kijakazi, 32 F.4th 785, 788 (9th Cir. 2022) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); Ford, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); Terry v. Saul, 998 F.3d 1010, 1013 (9th Cir. 2021).  Plaintiff's citation to contrasting incidents does not undercut the ALJ's conclusion based on the totality of the evidence, particularly here, where the ALJ plainly accounted for plaintiff's severe mental health episodes, including her 2022 hospitalization.  AR 23.  The court finds no error.

Plaintiff also contends that the ALJ improperly found that plaintiff's daily activities contradicted her subjective testimony.  ECF No. 10 at 10-11.  The ALJ discounted plaintiff's subjective testimony based on her daily activities, including plaintiff's ability to care for herself, prepare meals, clean care fort pets, and complete tasks albeit with some distraction.  Id.  The ALJ concluded that the record supports "finding severe mental impairments, though none would preclude all work." Id.  The court agrees with plaintiff that the ALJ somewhat overstated plaintiff's testimony regarding her activities of daily living.  For example, the ALJ stated that plaintiff is able to "prepare meals," though plaintiff's actual testimony makes clear that she cooks only with supervision.  AR 24,  55.  Regardless, error in this secondary basis for discounting plaintiff's subjective testimony is harmless because the ALJ validly discounted plaintiff's subjective testimony as inconsistent with the medical record which showed a history of symptom control with medication.  AR 23; Warre, 439 F.3d at 1006.

B.  The Medical Source Opinion of Dr. Molyn

Plaintiff alleges that the ALJ improperly evaluated the opinion of consultative psychological examiner Dr. Molyn.  ECF No. 10 at 12, AR 390-396.  Dr. Michael A. Molyn, Psy. D., NScM submitted an opinion dated October 14, 2022, diagnosing plaintiff with Major Depressive Disorder, Recurrent Episodes, Severe, Social Anxiety Disorder, and Generalized Anxiety Disorder.  AR 395-96.  Dr. Molyn noted that plaintiff was overly anxious but casually

dressed at the consultation, and that she had driven herself to the interview. AR 391-92. With respect to mental status, Dr. Molyn recorded that plaintiff had "no sign of tremor, tics, or hyperactivity. Her voice tone, speech tempo, and voice volume were normal. Diction was clear . . . stream of conversation was linear and goal oriented. Response latencies were normal. Her relationship with the interviewer was open and cooperative. Affect was slightly restricted . . . predominant mood was moderately anxious." AR 393. Dr. Molyn noted that based on his observations at the interview, plaintiff's abstract thinking and judgment were unimpaired. Id. No psychotic thought process was reported or observed, and plaintiff's fund of information appeared normal. AR 393-94. Dr. Molyn assessed marked limitations in plaintiff's independent living skills and participation in daily activities, and moderate limitation on social functioning, based on plaintiff's description of her daily life. AR 392. Except for ability to interact with coworkers, supervisors and the public, which Dr. Molyn found markedly impaired, he found plaintiff was unimpaired to moderately impaired in areas of mental functioning. AR 394-95.

In evaluating medical opinion evidence, ALJs give no specific evidentiary weight to any particular type of opinion or source but instead must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources and evaluate their persuasiveness. Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of a physician opinion include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2).

Supportability and consistency are defined in the regulations as follows:

Supportability. The more relevant the objective medical evidence

10

and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2).

The Ninth Circuit confirmed that the regulatory framework eliminates the "treating physician rule" and displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion.  Woods v. Kijakazi, 32 F.4th 785 (9th Cir. 2022).  Still, in rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence.  Id.  In sum, the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings."  Id. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

Plaintiff argues the ALJ failed to properly evaluate Dr. Molyn's opinion in accordance with the requirements of Woods and 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  With regard to the supportability factor, the ALJ asserted that Dr. Molyn's assessment of marked social limitations conflicted with the results of his own consultative examination, which showed that plaintiff had a "generally normal mental status."  AR 25.  Though plaintiff argues that "the results of the psychological examination were far from normal," this assertion is belied by a review of the examination report itself, which indicates that Dr. Molyn's personally observed no abnormalities other than an anxious affect.  AR 395-91.  The court agrees with the ALJ's assessment, which found Dr. Molyn's opinion unsupported by his own observations.  AR 25.

Further, the ALJ properly evaluated the consistency factor by finding Dr. Molyn's assessment of marked limitations at odds with the longitudinal record, which showed normal

11

examinations and improvement with treatment, and unsupported by anything *besides* plaintiff's statements, which the ALJ reasonably discounted. AR 25. Plaintiff argues that in the context of a psychological examination it was appropriate for Dr. Molyn to make fundings and assess limitations based on plaintiff's self-reports, citing Buck v. Berryhill, which held that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017)869 F.3d 1040 (9th Cir. 2017). Here, however, the ALJ did not solely discount Dr. Molyn's opinion because it was based on plaintiff's self-reports; she discounted it because it contained marked restrictions that were contradicted by his own observations and the longitudinal medical record, including progress notes demonstrating plaintiff's improved functioning with medication. AR 25. See Villalobos v. Comm'r of Soc. Sec., No. 2:23-cv-1891 SCR, 2025 WL 958584, at *6, 8-9 (E.D. Cal. Mar. 31, 2025). The court finds no error in the ALJ's treatment of Dr. Molyn.

C.   Impact of Morbid Obesity

Plaintiff asserts in her motion that the ALJ improperly found her morbid obesity nonsevere at step two, using only boilerplate language. ECF No. 10 at 17; AR 20. "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were considered. Bowen v. Yuckert, 482 U.S. 137, 153 (1987). At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p, 1996 SSR LEXIS 10 (1996)).

The step two severity determination is "merely a threshold determination of whether the claimant is able to perform his past work. Thus, a finding that a claimant is severe at step two only raises a prima facie case of a disability." Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007). At step two, plaintiff has the burden of providing medical evidence of signs, symptoms,

12

and laboratory findings that show that his or her impairments are severe and are expected to last for a continuous period of twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005); see also 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii).

Here, the ALJ found plaintiff's obesity did not have more than a minimal effect on her ability to work or function and, thus, the condition was not severe. AR 20. In reaching this conclusion, the ALJ found persuasive the State agency medical consultants' finding that plaintiff did not have any severe physical impairments even though her BMI ranged from 45.96 to 50 (AR 20; citing AR 70, 76, 89, 95, 110, 117, 130, 137). As one of the consultants explained, notwithstanding plaintiff's BMI, she did not have any physical limits in her activities of daily living (AR 117, 137 ("BMI 46, no specific physical limits on ADLs."). The court finds the analysis sufficient in light of the lack of evidence in the record indicating any limitations resulting from plaintiff's obesity. Indeed, though plaintiff argues that the ALJ erred in her analysis, she does not point a single instance in the record in which plaintiff or any other source indicated that plaintiff's obesity was a factor in her functional limitations. ECF No. 10 at 17-18. Accordingly, the court finds no error.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 10), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 14 is GRANTED; and

3. The Clerk of the Court shall enter judgment for defendant, and close this case.

DATED: February 10, 2026

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

13